## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### Tyler Division

|  |  |
|---|---|
| THOMAS L. HUTT,<br><br>　　　*Plaintiff,*<br><br>　　v.<br><br>SHELL PLC; SHELL USA, INC.; and WAYNE HUNT,<br><br>　　　*Defendants.* | Case No.<br><br>**COMPLAINT**<br><br>JURY DEMANDED |

Plaintiff Thomas Hutt, by and through undersigned counsel, hereby alleges as follows:

### INTRODUCTION

1.　Plaintiff Thomas Hutt is a highly experienced corporate security professional who devoted nearly 15 years of service to Defendant Shell USA, Inc. ("Shell USA"), a wholly owned subsidiary of Defendant Shell PLC.

2.　For the last eight years of his employment, Mr. Hutt served as Country Security Manager in Shell USA's Corporate Security Division. At all relevant times, Mr. Hutt reported directly to Defendant Wayne Hunt, the Regional Security Manager for Corporate Security Americas.

3.　Mr. Hutt is a 60-year-old white American male and a military veteran. Throughout his tenure at Shell USA, Mr. Hutt consistently received outstanding performance evaluations and regular salary increases, and other recognition reflecting his exemplary performance and substantial contributions to the company.

4.    Shell USA, Shell PLC, and Mr. Hunt (collectively, "Defendants") have openly promoted diversity, equity, and inclusion ("DEI") initiatives throughout their operations and employment practices. Defendants boast on their website that they aim to "become one of the most diverse" companies "in the world." *See Global Diversity, Equity and inclusion*, SHELL, https://perma.cc/2SXV-MEM9 (last visited May 28, 2025).

5.    Defendants identify "Race & Ethnicity" as one of their principal DEI "focus areas" and maintain a "Global Council for Race," which his charged with advancing "racial and ethnic representation across [the] workforce" and creating a workforce that "reflect[s] the communities in which [employees] work." *See id.*; *Race and ethnicity*, SHELL, https://perma.cc/2YAX-P3MQ (last visited May 28, 2025).

6.    Shell PLC has explicitly committed to increasing racial minority representation in senior management, publicly announcing a goal of achieving 15% ethnic minority representation in its senior management by 2027. Shell PLC, *Annual Report and Accounts 2024*, at 117 (Mar. 25, 2025), https://perma.cc/LGP9-6F4S; Spell PLC, Form 20-F: Annual Report for the Fiscal Year Ended Dec. 31, 2024, at 117 (Mar. 25, 2025), https://perma.cc/8PR3-R9VY.

7.    Defendants do not treat these DEI objectives as mere aspirations. Instead, they work aggressively to implement these race-conscious initiatives through personnel decisions, management practices, and workplace policies, including within Shell USA's Corporate Security Division.

8.   On January 9, 2025, Defendant Hunt announced an unexpected "departmental reorganization."

9.   The purported reorganization targeted the only three white employees in the Corporative Security Division—including Mr. Hutt.

10.   The "reorganization" was not conducted according to Shell protocols. Defendants instructed Mr. Hutt and his direct reports to apply for newly created positions within the reorganized department, but none was offered a comparable opportunity to remain employed.

11.   On January 23, 2025, while the reorganization was ongoing, Mr. Hutt and his direct reports each filed an internal complaint against Defendant Hunt, alleging that the reorganization discriminated against employees based on race, national origin, and age. Mr. Hutt participated as a witness in the ensuing investigation.

12.   On March 3, 2025, just forty days after Mr. Hutt filed his complaint, Defendants notified Mr. Hutt that he had not been selected for any position within the reorganized department.

13.   Defendant Hunt replaced Mr. Hutt with William Jackson, a black man from Nigeria who lacked experience in executive protection.

14.   Mr. Jackson previously served as the head of the Fraud Investigations Division for Shell Nigeria, where his responsibilities centered on fraud investigations, not executive protection or the duties performed by Mr. Hutt.

15.   On or about May 19, 2025, Defendant Hunt presented Mr. Hutt with a "tear jar"—a novelty gift designed to collect tears shed in grief. The gift mocked employees

3

whose employment had just been terminated and reflected deliberate indifference toward the discriminatory consequences of the reorganization.

16. Shell USA ended Mr. Hutt's employment on May 31, 2025. Defendants terminated him because of his race and national origin and retaliated against him after he opposed their unlawful discrimination, in violation of federal and Texas law.

## PARTIES

17. Plaintiff Thomas Hutt is a 60-year-old white male and American citizen. His primary residence is in Rusk, Texas.

18. Defendant Shell PLC is a British multinational oil and gas company, headquartered in London, England.

19. Defendant Shell PLC has over 500 employees.

20. Defendant Shell USA is a domestic corporation incorporated in the state of Delaware, with its corporate headquarters at 150 North Dairy Ashford Road, Houston, Texas 77079. Shell USA is a wholly owned subsidiary of Shell PLC.

21. Defendant Shell USA has over 500 employees.

22. At all relevant times, Defendant Wayne Hunt was and continues to serve as the Regional Security Manager for Corporate Security Americas at Shell USA. In this role, Defendant Hunt oversees the team that provides security for Shell USA's personnel, assets, and operations.

23. At all relevant times, Defendant Hunt oversaw the 2025 reorganization in the Corporate Security Division at Shell USA.

4

24. At all relevant times, Defendant Hunt reported to Duncan Manning, the Corporate Security Vice President, who managed the Corporate Security Team at Shell PLC.

## JURISDICTION

25. This Court has subject-matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

26. The Court has subject-matter jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because these claims are sufficiently related to the federal claims in this action such that they form part of the same case or controversy.

27. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice occurred in the State in which this District is located.

## BACKGROUND

*Plaintiff Hutt's Background & Tenure at Shell*

28. Mr. Hutt is a veteran of the United States Marine Corps. He served from 1984 to 1990 as an Anti-Tank Missileman.

29. Between 1992 and 2010, Mr. Hutt served at the Texas Department of Criminal Justice, where he rose to the rank of Major. He supervised more than 700 correctional officers and was responsible for all the physical structures on the compound, security equipment, and security policies and procedures.

30. From 2010 to 2025, Mr. Hutt worked at Shell USA.

31. In 2017, Defendants promoted Mr. Hutt to the role of Country Security

Manager for the United States. In that role, Mr. Hutt provided security management support for all Shell USA operations across the United States.

32.  As the Country Security Manager, Mr. Hutt routinely liaised with federal, state, and local authorities; conducted threat risk assessments on all levels of Shell operations; led security operations for all emergency and crisis response events; and performed a wide variety of other duties and responsibilities. Additionally, Mr. Hutt held a security clearance from the U.S. Department of Homeland Security.

33.  Mr. Hutt's educational credentials include a Bachelor's Degree from the University of Texas; multiple degrees from Trinity Valley Community College; and a Master's Degree in Security Management for Executives from the University of Houston. He also holds certifications from the American Society for Industrial Security for Executive Protection and Physical Security.

34.  From the beginning of his tenure to June 2023, Mr. Hutt enjoyed a strong, positive relationship with his supervisor, Defendant Hunt.

35.  In Mr. Hutt's 2020 performance evaluation, Defendant Hunt reported that:

> [Mr. Hutt] is a very strong and experienced security manager with an equally robust work ethic. He provides a volume of work which is maintained at a high standard of delivery. He is not phased by disparate workstreams, having the ability to prioritize and maintain his stakeholders expectations. He demonstrates the ability to identify key stakeholders, works collaboratively and inclusively through his work with a good level of communication. He is clearly held by business and functional colleagues in high regard due to the effort and motivated manner he applies himself with to all his work.

36.  In his 2021 evaluation, Defendant Hunt described Mr. Hutt as "the engine of

6

Corporate Security in the USA." Defendant Hunt also noted Mr. Hutt's "impressive work ethic," commended him for "devis[ing] and introduc[ing] several new initiatives," and characterized him as "the 'go-to' for technical security advice." Defendant Hunt even hinted at Mr. Hutt's potential for another promotion, concluding the evaluation of Mr. Hutt's professional strengths with the recognition that "[Mr. Hutt] demonstrates the capability to adopt increased levels of responsibility[, which is] backed by a strong Learner Mindset."

37.  In Mr. Hutt's 2022 performance evaluation, Defendant Hunt reported that "[Mr. Hutt's] recent appointment to the role as the US Country Security Manager reflects his depth of security and team management skills." He added that Mr. Hutt "is a reliable business stakeholder who demonstrates effective relationship building at all levels and good business partnering skills; the latter is clearly evident through the support provided to the 'Reshaped' Shell business organizations and to the numerous capital projects he provides support to." Defendant Hunt also praised Mr. Hutt's "good judgement" allowing him to "provid[e] sound advice to the businesses."

38.  In Mr. Hutt's 2023 performance evaluation, completed on July 31, 2023, Defendant Hunt reported that Mr. Hutt "is an experienced security manager and adept at employment security risk management principles." Defendant Hunt added that Mr. Hutt "possesses a very strong work ethic and strives to deliver at pace and to a good standard at all times." In Defendant Hunt's description of Mr. Hutt's leadership strengths, he noted that "[Mr. Hutt] is a respected team member and leader of his own team" and that "[h]e strives to maximize the performance of his own

team, coaching and empowering members to work effectively across the organization."

39. These statements are emblematic of the exceptional performance reviews that Mr. Hutt received during his tenure at Shell prior to the reorganization.

*Mr. Taylor's 2023 Complaint*

40. In July 2023, one of Mr. Hutt's direct reports filed an internal complaint with Shell USA's Human Resources Division, alleging unlawful employment practices by Defendants.

41. In the ensuing internal investigation, Mr. Hutt participated as a witness and provided truthful information regarding the matters under investigation.

42. Following the investigation, Shell USA determined that Defendant Hunt had engaged in misconduct and issued a formal reprimand.

43. Defendant Hunt knew that Mr. Hutt had participated in the investigation and had provided information adverse to Defendant Hunt's interests.

44. After Mr. Hutt participated in the investigation, Mr. Hutt's previously positive working relationship with Defendant Hunt quickly and materially deteriorated. Defendant Hunt began treating Mr. Hutt differently than before and subjected him to increased scrutiny and criticism.

45. Although Mr. Hutt had consistently received strong performance evaluations, positive feedback, and regular pay increases throughout his tenure, Defendant Hunt thereafter began issuing unwarranted negative performance evaluations and criticism that departed sharply from Mr. Hutt's established record of successful

performance.

46. Defendant Hunt also subjected Mr. Hutt to heightened performance management and coaching measures that were inconsistent with Mr. Hutt's actual performance and were intended to create a pretext for future adverse employment actions.

*Shell's Commitment to Achieving Racial Diversity*

47. At all relevant times, Shell USA and Shell PLC (collectively, the "Shell Defendants") have maintained a website that highlights "some of the things we're doing" to shape the workforce. *See Global diversity, equity and inclusion*, SHELL, https://perma.cc/2SXV-MEM9 (last visited May 28, 2025). These activities include promotion, hiring, and employment practices motivated by immutable characteristics such as race and sex. *Id.*

48. The Shell Defendants maintain DEI "pillars" and "guiding principles," which instruct employees to hire and promote individuals based on immutable characteristics. *Id.*

49. The Shell Defendants also maintain a "Global Council for Race," which seeks to ensure that the racial composition of its workforce "better reflect[s] the communities in which [Shell employees] work." *Race and ethnicity*, SHELL, https://perma.cc/2YAX-P3MQ (last visited May 28, 2025).

50. The Shell Defendants also maintain "race and ethnicity action plans." *See Race and ethnicity*, SHELL, https://perma.cc/2YAX-P3MQ (last visited May 28, 2025).

51. In the Shell Annual Report and Accounts for 2024, the Shell Defendants

9

admitted that they knowingly and intentionally use race, color, and sex as motivating factors in their employment practices.

52.    Shell's Annual Report and Accounts for 2024 states: "Shell aims to achieve 15% ethnic minority group representation in its Senior Management [B] by 2027. As of the end of 2024, 15% of Shell's Senior Management identifies as being from an ethnic minority group."

53.    The Shell Defendants use extensive internal reporting to document progress towards their goals, which include illegal racial quotas.

54.    The Shell Defendants stated in the Shell Annual Report and Accounts for 2024 that "through racial and ethnic representation across our workforce, we aim to reflect the communities in which we work."

55.    The Shell Defendants publicly state that they seek to ensure that, at all times, at least one member of their Board of Directors is from an ethnic minority background.

56.    As of December 31, 2024, the Board for Shell had three members who identify as members of an ethnic minority group and one Executive Committee member who identifies as being a member of an ethnic minority group.

57.    As of the end of 2024, 15% of Shell PLC's Senior Management identified as being from an ethnic minority group.

58.    Shell PLC further states that "Shell aims to achieve 15% ethnic minority group representation in its Senior Management [B] by 2027."

*Defendant Hunt's Discriminatory Reorganization*

10

59. Shell USA's internal policies provide that departmental reorganizations must be administered through the Human Resources Division.

60. Shell USA's policies also require that, before recruiting externally for newly created or reorganized positions, existing employees must be afforded the opportunity to remain in their current or substantially similar roles.

61. Specifically, Shell USA applies an "incumbent preference," under which employees seeking to remain in their existing positions are to be designated as the preferred candidates for those positions.

62. On January 9, 2025, Defendant Hunt announced what he described as a "departmental reorganization" of the Corporate Security Division.

63. Defendant Hunt implemented the reorganization in a manner that treated white employees differently from similarly-situated racial-minority employees.

64. The only three white employees in the Houston-based Corporate Security Division—including Mr. Hutt—were required to compete for their existing positions and identify backup positions.

65. By contrast, similarly situated employees who were racial minorities were permitted to remain in or transition into substantially similar positions without being subjected to the same requirements.

66. On or about January 20, 2025, Defendant Hunt told one of the white members of the Corporate Security Division that he needed to reapply for his position because Defendant Hunt was seeking to "diversify the talent."

67. On or about January 23, 2025, each of the three white employees of the

11

Corporate Security Division, including Mr. Hutt, filed internal complaints with Shell USA's Human Resources Division alleging that Defendant Hunt's reorganization constituted unlawful employment discrimination.

68. The complaints triggered an internal investigation at Shell USA.

69. During the ensuing investigation, Mr. Hutt offered truthful testimony about the matters under investigation.

70. Shortly thereafter, Defendant Hunt learned that Mr. Hutt had offered testimony that was averse to his interests.

71. While the investigation was ongoing, Mr. Hutt reapplied for his existing role.

72. The job posting for Mr. Hutt's role indicated that selection would involve a written assessment, but "[g]rading decisions will also depend on other factors." The job posting did not identify those other factors or explain how they would be evaluated.

73. Mr. Hutt was required to compete for his own position despite nearly fifteen years of service with Shell USA and approximately eight years of service as Country Security Manager.

74. Consistent with Shell USA's incumbent-preference policy, Mr. Hutt should have been designated the preferred candidate for his position.

75. But Mr. Hutt was not designated as the preferred candidate and he was not selected for the role.

76. Instead, Defendant Hunt selected William Jackson, a black male, to replace Mr. Hutt as Country Security Manager.

77. Before his selection as Country Security Manager, Mr. Jackson had served on an expatriate assignment in Lagos, Nigeria, within Shell PLC's Business Integrity function, where his primary responsibilities involved investigating fraud allegations.

78. Mr. Jackson lacked substantial experience in executive protection and the security of corporate personnel and physical assets, which were central responsibilities of the Country Security Manager position.

79. Mr. Hutt possessed significantly greater experience and qualifications for the position, including nearly fifteen years with Shell USA, approximately eight years serving as Country Security Manager, consistently positive performance evaluations, and extensive experience managing corporate security operations.

80. Notwithstanding Mr. Hutt's superior qualifications and Shell USA's incumbent-preference policy, Defendant Hunt did not select Mr. Hutt for the position.

81. Defendants terminated Mr. Hutt's employment effective May 31, 2025.

82. The other employees in the Corporate Security Division—all racial minorities—were not required to reapply for their current roles. The other employees in the Corporate Security Division included Connie Olivarez, Matias Solis Colombo, and Cecilia De los Rios.

83. Prior to the reorganization, Defendant Hunt demonstrated a pattern of replacing white American male employees with non-American minorities.

84. For example, in 2024, Defendant Hunt replaced a Regional Security Advisor, a white American male based in Houston, with Matias Solis Colombo, a male from Argentina.

85.  Defendant Hunt also replaced a white American male US Intel Analyst with Cecilia De los Rios, a Mexico-based Intel Analyst and a non-US Citizen.

86.  On or about May 19, 2025, Defendant Hunt purchased and presented Mr. Hutt and Ms. Romak with a "tear jar"—that is, a novelty gift designed to collect tears shed in grief. The gift mocked employees whose employment had just been terminated and reflected deliberate indifference toward the discriminatory consequences of the reorganization.

87.  Throughout the reorganization, Defendant Hunt departed from Shell USA's established policies, denied incumbent preference to white employees, required only white employees to compete for their existing positions, selected less-qualified minority candidates over more-qualified white employees, and retaliated against employees who complained of discrimination.

*EEOC Charges*

88.  On March 6, 2025, Mr. Hutt filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

89.  On June 4, 2026, the EEOC issued a Notice of Right to Sue to Thomas Hutt.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**
**Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**

90.  Plaintiff incorporates the foregoing paragraphs as though fully restated here.

91.  42 U.S.C. § 1981 prohibits racial discrimination in employment.

92.  Defendants conspired and agreed to eliminate and deny employment positions to Mr. Hutt based on race.

14

93. Defendants, jointly and severally, knowingly and intentionally violated Section 1981 by wrongfully discharging Mr. Hutt as Country Security Manager, and terminating him from Shell, USA, Inc., because of his race.

94. Defendants have acted with malice and/or reckless indifference to Mr. Hutt's rights, and thus have caused him to be damaged.

**COUNT II**
**Termination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

95. Plaintiff incorporates the foregoing paragraphs as though fully restated here.

96. Plaintiff Hutt is a white male.

97. Plaintiff Hutt was objectively more qualified than the candidates selected for the positions for which he applied.

98. Despite his qualifications for the position, the Defendants, jointly and severally, including through Wayne Hunt's intentional actions, selected a less qualified person of color over Mr. Hutt because of his race, color, or national origin.

99. Further, a pattern and practice of discrimination occurred in Defendants' January 2025 reorganization, which resulted in Mr. Hutt's termination.

100. Defendant Hunt further expressly admitted that he was seeking to "diversify the talent," which, together with Shell's policies on DEI stated above, shows that the Defendants jointly intentionally sought to promote people of color over white people.

101. Mr. Hutt has complied with Title VII's charge filing provisions, 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).

102. Mr. Hutt filed a timely charge of discrimination against Shell with the EEOC.

15

103. Mr. Hutt received a Determination and Notice of Rights letter from the EEOC.

104. Defendants were motivated by their desire to replace white employees in the Corporate Security Division with persons of color, and discriminated against Mr. Hutt concerning his compensation, terms, conditions, or privileges of employment because of his race.

105. Shell's actions as described herein constitute race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. § 2000(e)-2(a), and have caused Plaintiff Hutt to be damaged, including loss of past income, benefits, and future income.

**COUNT III**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

106. Plaintiff incorporates the foregoing paragraphs as though fully restated here.

107. In 2023, Mr. Hutt participated in an investigation that followed Mr. Taylor's complaint about workplace practices.

108. On January 23, 2025, Mr. Hutt lodged an internal complaint regarding the reorganization of the Corporate Security Division.

109. On March 6, 2025, Mr. Hutt filed an EEOC charge alleging policy violations in the reorganization process and alleging that Defendant Hunt had engaged in racial discrimination.

110. These actions constitute  protected activity under 42 U.S.C. § 2000e-3 because Mr. Hutt "opposed a[] practice made an unlawful employment practice by this subchapter" and "participated in . . . an investigation."

111. On March 3, 2025, Mr. Hutt was notified that he would not receive any role in the reorganization and would be terminated effective May 31, 2025. This termination was retaliation for the filing of an EEOC charge.

## COUNT IV
### Discrimination in Violation of Ch. 21 of the Texas Labor Code, TEX. LAB. CODE § 21.051 (Against Shell Defendants)

112. Plaintiff incorporates the foregoing paragraphs as though fully restated here.

113. Section 21.051 of the Texas Labor Code prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation or the terms, conditions, or privileges of employment because of the individual's race, color, or national origin.

114. The Shell Defendants "employers" within the meaning of the Texas Labor Code.

115. Mr. Hutt is an employee within the meaning of the Texas Labor Code and is a member of a protected class based on his race and national origin.

116. The Shell Defendants knowingly and intentionally discharged Mr. Hutt from his position as Country Security Manager and terminated his employment with Shell USA because of his race and national origin.

117. The Shell Defendants replaced Mr. Hutt with a less qualified individual of a different race, Mr. William Jackson.

118. The Shell Defendants' actions constitute unlawful employment discrimination in violation of Section 21.051 of the Texas Labor Code.

119. As a direct and proximate result of the Shell Defendants' unlawful conduct,

17

Mr. Hutt has suffered and continues to suffer damages, including but not limited to loss of past and future wages, benefits, emotional distress, and mental anguish.

**COUNT V**
**Retaliatory Termination in Violation of Ch. 21 of the Texas Labor Code,**
**TEX. LAB. CODE § 21.055**
**(Against Shell Defendants)**

120. Plaintiff incorporates the foregoing paragraphs as though fully restated here.

121. Section 21.055 of the Texas Labor Code prohibits an employer from retaliating or discriminating against a person who opposes a discriminatory practice, makes or files a charge, files a complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

122. Mr. Hutt engaged in protected activity when he participated in an investigation regarding Mr. Taylor's internal complaint.

123. Mr. Hutt engaged in protected activity when he filed an internal complaint on January 23, 2025, alleging discrimination based on the reorganization.

124. Mr. Hutt engaged in protected activity when he filed a charge of discrimination with the EEOC on March 6, 2025, alleging racial discrimination by Defendants.

125. Shortly after Mr. Hutt engaged in these protected activities, Defendants terminated his employment on May 31, 2025.

126. The Shell Defendants' termination of Mr. Hutt was in retaliation for his opposition to Defendants' unlawful employment practices and his filing of a charge with the EEOC.

127. The Shell Defendants' actions constitute unlawful retaliation in violation of § 21.055 of the Texas Labor Code.

18

128. As a direct and proximate result of the Shell Defendants' unlawful retaliation, Mr. Hutt has suffered and continues to suffer damages, including but not limited to loss of past and future wages, benefits, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in his favor and provide the following relief:

A.   A declaratory judgment that Shell violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, and Chapter 21 of the Texas Labor Code.

B.   An order for such relief, including back pay and front pay, and benefits, which will make Plaintiff Thomas Hutt whole for Shell's conduct; compensatory damages; punitive damages; and prejudgment and post-judgment interest.

C.   Reasonable costs and expenses of this action, including attorneys' fees, under Title VII of the Civil Rights Act of 1964, and any other applicable laws.

D.   Such other relief as the Court deems appropriate and just.

DATED: August 6, 2026

Respectfully submitted,

/s/ *John C. Sullivan*
John C. Sullivan
Attorney-In-Charge
Texas Bar No. 24083920
Sarah Cohen
Texas Bar No. 24126379
S|L LAW PLLC
610 Uptown Blvd., Ste. 2000
Cedar Hill, TX 57104
Phone: 469.523.1351
john.sullivan@slfirm.com
sarah.cohen@slfirm.com

Robert Andrew Crossin*
Ind. Bar No. 39340-49
Crystal Clanton*

19

Ala. Bar No. 1746D29O
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, D.C. 20003
Phone: 202.964.3721
bobby.crossin@aflegal.org
crystal.clanton@aflegal.org

*Pro hac vice* application
forthcoming

*Counsel for Plaintiff*